Filed 4/7/21  P. v. Medina CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ISAIAH NATHANIEL MEDINA,<br><br>　　　Defendant and Appellant. | F077974<br><br>(Super. Ct. No. MCR057745)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Joseph A. Soldani, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Isaiah Nathaniel Medina was convicted by jury of several sexual offenses perpetrated against his younger half sister, Jane Doe, arising from five incidents that occurred when she was approximately nine years old and he was approximately

16 years old. Appellant was convicted of four counts of forcible rape (Pen. Code,[1] § 261, subd. (a)(2); counts 1, 4, 6 & 12); seven counts of forcible lewd and lascivious acts upon a child under the age of 14 (§ 288, subd. (b)(1); counts 2, 3, 5, 7, 8, 10 & 13); one count of forcible oral copulation against a child under the age of 14 (§ 288a,[2] subd. (c)(2)(B); count 9); and one count of assault with intent to commit lewd conduct (§ 220, subd. (a)(2); count 11). As to counts 1, 4, 6, and 12, the jury found true that the victim was a child under 14 years of age (§ 264, subd. (c)(1)). As to count 9, the jury found true that the victim was a child under 14 years of age (§ 288a, subd. (c)(2)(B)). As to count 11, the jury found true that the victim was a child under 18 years of age (§ 220, subd. (a)(2)). As to counts 2, 5, 7, 10 and 13, the jury found true appellant had had substantial sexual contact with a child under the age of 14 (§ 1203.066, subd. (a)(8)).

As to count 1, appellant was sentenced to the aggravated prison term of 13 years. As to count 9, appellant was sentenced to a full and consecutive term of 12 years (§ 667.6, subd. (d)). As to count 4, appellant was sentenced to one-third the middle term of three years eight months. As to counts 6 and 12, appellant was sentenced to full and consecutive aggravated terms of 13 years each (§ 667.6, subd. (d)). As to count 11, appellant was sentenced to a full and consecutive aggravated term of nine years (§ 667.6, subd. (d)). The court imposed and stayed pursuant to section 654 aggravated terms of 10 years each as to counts 2, 3, 5, 7, 8, 10 and 13. Appellant's aggregate prison term was 63 years 8 months.

On appeal, appellant contends the judgment must be reversed because testimony by appellant's stepmother that the reason he did not appear in a family photo was because he had been incarcerated violated his constitutional rights to due process and a fair trial.

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    Former section 288a was recently amended and renumbered as section 287. (Stats. 2018, ch. 423, § 49 (S.B. 1494), eff. Jan. 1, 2019.)

In the alternative, appellant contends his conviction on count 11 must be reversed or reduced to simple assault because the trial court erred by failing to instruct the jury sua sponte on the lesser included offense of simple assault. We affirm.

## FACTS

Jane Doe was appellant's half sister. The two lived with their shared father; Doe's mother, Devon; and Doe's full siblings and appellant's half siblings, Mariah and Eli.

In July 2017, Doe disclosed to Devon that appellant had sexually abused her in 2016 when she was approximately nine years old and appellant was approximately 16 years old. Doe testified she decided to tell her mother because she had had a dream the night before where appellant was doing what he did to her to another little girl. Doe disclosed the abuse because she did not want appellant to do it to anyone else. Devon called the police that day.

As part of law enforcement's investigation into the allegations, Doe underwent a forensic interview wherein she explained to the forensic interviewer what happened. In addition to Doe's testimony at trial, a recording of the interview was played for the jury.

**Counts 1 through 5**

The first incident of sexual abuse took place after appellant asked Doe to get him something to eat and bring it to his room. Doe made appellant some popcorn, and when she brought it to him, he left the room and returned wearing only a towel. Appellant then put Doe on his bed and took off her shorts and underwear. Appellant spit in his hand and rubbed his hand on his penis. He then rubbed his penis on Doe's vagina and put his penis in her vagina three times. Appellant then flipped Doe over and rubbed his penis on her butt while holding her arms down. Appellant flipped Doe over a second time and again rubbed his penis near her vagina and put his penis into her vagina three times.

**Counts 6 through 8**

The second incident occurred when Doe was alone in her room watching a movie on her tablet. Appellant went into Doe's room, turned off her tablet, and laid her on the

3.

ground.  Appellant pulled off her shorts and underwear, as well as his own.  Appellant rubbed his penis on Doe's vagina and then put his penis inside her vagina.  Appellant then flipped Doe over and put his penis into her butt and moved it "up and down."

**Counts 9 and 10**

On the third occasion, appellant called Doe into his room, put her on her knees on the floor, and told her to open her mouth.  When Doe refused, appellant forced her mouth open with his hands, and put his penis in her mouth.  Doe felt a "line" on appellant's penis with her tongue.  Afterwards, Doe felt disgust and threw up in the bathroom.

**Count 11**

On the next occasion, when Doe was taking a shower, appellant entered the room and asked Doe if he could use the bathroom.  Doe told him he could, and she could hear him use the toilet and wash his hands.  Appellant then asked Doe if he could get into the shower with her.  Doe said no, but appellant got in anyway.  Doe testified appellant was not wearing any clothes when he entered the shower.  After entering the shower, appellant lifted Doe up on his chest while "squeezing" her buttocks.  Appellant then slipped and fell out of the shower, landing on a vase Doe had previously placed on the floor from the bathroom sink because she had been cleaning it.  Appellant broke the vase and cut himself on the glass.

Mariah was home at the time of the shower incident and testified she heard a loud noise from the bathroom.  When she went to see what the noise was, she saw appellant lying on the bathroom floor with glass shattered and Doe standing behind him with a towel wrapped around her.  Doe's hair was wet.  Mariah could not remember if appellant's hair was wet but she recalled that his feet were wet.  According to Mariah, appellant was clothed.  Mariah stated it was peculiar that appellant was in the bathroom because all the other bathrooms in the house were unoccupied.  While it was not uncommon in their family for someone to use the bathroom while another person was in the shower, appellant had stopped doing so when he got older.

4.

Devon testified she was not home at the time of the incident, and when she arrived home, Mariah told her appellant had cut himself, so she went to his room to check on him. When Devon asked appellant what happened, he told her he was using the bathroom, but there was no toilet paper. When he got up to get some, he slipped and fell on the vase. Appellant did not tell Devon that Doe was in the bathroom; Mariah told Devon this later. When Devon asked appellant about it, he told her all the other bathrooms had been full. Devon testified the home had three bathrooms at the time, and they were all working.

**Counts 12 and 13**

The last incident occurred when appellant asked Doe if she wanted to play a video game in his room. Doe went into appellant's room, and had been playing the game for a few minutes on appellant's bed, when appellant put a blanket over her face, took off her clothes, and touched her on her buttocks with his penis. He then flipped her over and rubbed his penis on her vagina while holding her arms. She testified appellant's penis went in "between [her] vagina" and told the forensic interviewer appellant was holding her knees down with his knees and then "shove[d] his penis up [her] vagina" five times Appellant then flipped her over again and rubbed his penis on her butt; he tried to put his penis in her anus, but she squeezed her butt muscles so he was unable to.

**Defense Evidence**

Appellant testified in his own defense. He denied ever touching Doe in a sexual way and said he did not know where the allegations came from. As for the shower incident, appellant testified he entered the bathroom and cracked open the shower curtain to ask Doe if she had cleaned the bathroom, which was her assigned chore.[3] He then used the bathroom.

---

[3] During Doe's testimony, she denied that appellant told her she was supposed to be cleaning the bathroom when he entered the bathroom.

Both appellant's grandmothers testified that appellant was honest.

## DISCUSSION

**I.      Devon's Testimony that Appellant Had Been Incarcerated**

*A.      Relevant Background*

During the defense's cross-examination of Doe, the defense asked Doe to identify several family photographs that did not include appellant.  According to appellant, the purpose of this was to show evidence that "appellant was not treated like other members of the family and did not participate in familial events in order to establish a general familial bias against him."

During direct examination of Devon, the prosecutor showed Devon each of these photographs and asked her the reasons why appellant was not in any of them.  The prosecutor first showed Devon a photograph of her, Doe, Mariah, and their father from a concert taken in July of the previous year.  Devon said Eli was not in the photo because he was at home with Devon's cousin, and appellant was not in the home at that time "because everything that was alleged."

The prosecutor then presented Devon with another photograph.  The following colloquy occurred:

> "[PROSECUTOR:]  I'm handing you what's been previously marked as … Defense Exhibit No. 6.  Do you recognize that?  [¶] … [¶]
>
> "[DEVON:]  This was a picture I took of the kids on the first day of school.
>
> "[PROSECUTOR:]  All right.  And you say 'the kids,' which kids are in that photo?
>
> "[DEVON:]  Um, Mariah, [Doe] and Eli.
>
> "[PROSECUTOR:]  [I]s one of your children missing from the picture?
>
> "[DEVON:]  [Appellant].

6.

"[PROSECUTOR:] Do you recall why he was missing from the picture?

"[DEVON:] He was incarcerated."

Immediately after Devon's answer, defense counsel asked to approach the bench. During the bench conference, defense counsel moved for a mistrial because of Devon's answer that appellant was incarcerated; he contended the information was intentionally elicited by the prosecutor and that appellant's right to a fair trial had been violated. The prosecutor explained she was trying to illustrate why appellant was absent from the photographs because of the defense's position that "this was a Cinderella-type situation." The court stated it would take up the motion for mistrial later outside the presence of the jury. Defense counsel admitted to the court he did not know when the photographs he introduced had been taken.

Following the bench conference, the prosecutor continued questioning Devon. She asked about another photograph introduced by the defense of the family on a camping trip and asked why appellant was not present for the photograph. Devon answered that appellant was given the opportunity to join the family but "couldn't" attend. The prosecutor presented Devon with another photograph of the family at the beach, and Devon testified appellant was not present for the photograph though "he was previously supposed to be in [*sic*] that trip."

When the parties were outside the presence of the jury, the court addressed the defense's motion for a mistrial. Defense counsel noted appellant had been dressed in suits every day and that the prosecutor had committed misconduct by eliciting testimony he was incarcerated. The prosecutor denied knowing what Devon would say in response to her question and stated she was merely trying to find out why appellant was not present in the photographs in attempts to refute appellant's "Cinderella" narrative.

The court pointed out the testimony did not establish that appellant was incarcerated at the time of the trial, but during a period in June or July, and that it did not

7.

appear the prosecutor knew what the answer would be. The court noted it was "a little bit concerned" the defense introduced a photograph taken at a time they knew or should have known appellant was in custody, and the defense should have at least notified the prosecutor that appellant was in custody at the time it was taken. The court denied the defense's motion for a mistrial.

The court told defense counsel it would consider a motion to strike Devon's answer but noted it was "sort of a two-edged sword," in that it would remind the jury of it. Defense counsel moved to strike the answer adding, "I would not like to have the jury apprised of that, just that the record's going to be silent. If they ask for her testimony, that statement I would ask to have it stricken, but I don't want to bring more attention to it to what has already been brought by our … approaching the bench." The court granted defense counsel's motion to strike the answer, "he was incarcerated," and stated it would not instruct the jury at the request of the defense.

### B.     Analysis

Appellant argues Devon's testimony that appellant "was incarcerated" at the time the photograph was taken rendered his trial fundamentally unfair, violating his right to due process and a fair trial under the Fourteenth Amendment. Interestingly, appellant concedes the trial court's ruling on the mistrial motion was not error and expressly does not challenge it. Rather, appellant argues the reasons the jury hearing mention of appellant's incarceration rendered his trial fundamentally unfair was because the fact was irrelevant and more prejudicial than probative.

Appellant's arguments are not persuasive. We note that by granting appellant's motion to strike Devon's answer, the trial court appeared to impliedly agree with him that the answer was irrelevant and unduly prejudicial, but that it did not rise to the level of

unfairness which would have justified granting his motion for mistrial,[4] a ruling, again, appellant does not challenge. We accept appellant's premise, as the trial court appeared to, that the answer was irrelevant and unduly prejudicial, but this does not automatically give rise to the conclusion that the jury hearing it rendered appellant's trial fundamentally unfair so as to violate his due process rights.[5] In this case, we conclude it did not.

Though appellant concedes the trial court acted within its discretion by denying his motion for mistrial, we begin by discussing briefly why we agree with appellant on that point because it lays the foundation for why appellant's claim fails.

The court should grant a motion for mistrial if prejudice to the defendant arises that is " ' "incurable by admonition or instruction." ' " (*People v. Franklin* (2016) 248 Cal.App.4th 938, 955.) "[I]t is only in the 'exceptional case' that any prejudice from an improperly volunteered statement cannot be cured by appropriate admonition to the jury." (*Ibid.*)

*People v. Collins* (2010) 49 Cal.4th 175 (*Collins*) is analogous to the present case. In *Collins*, a witness voluntarily testified the defendant "had been trying to call her 'ever since he was arrested' " and had called her from " 'Susanville before he got out.' " (*Id.* at pp. 196–197.) The trial court denied the defendant's motion for mistrial but offered to strike that portion of the testimony and give the jury a limiting instruction. (*Id.* at pp. 197–198.) Defense counsel declined the offer to avoid highlighting the testimony further. (*Id.* at p. 198.) On review, the California Supreme Court held that no violation of the defendant's rights to due process and a fair trial under the federal and state Constitutions occurred when the court denied the defendant's motion for mistrial. (*Id.* at

---

[4]  "[A] motion for mistrial should be granted only when ' "a party's chances of receiving a fair trial have been irreparably damaged." ' " (*People v. Ayala* (2000) 23 Cal.4th 225, 282.)

[5]  An alleged error violates due process when it makes the trial fundamentally unfair. (*People v. Partida* (2005) 37 Cal.4th 428, 436.)

9.

pp. 198–199.) The court held: "[The witness's] remarks regarding defendant's phone calls were brief and ambiguous. The court did not abuse its discretion in concluding that any prejudicial effect could b[e] cured by an admonition." (*Id*. at p. 199.)[6]

Like in *Collins*, Devon's reference to appellant's incarceration was brief and ambiguous. Because we conclude the prejudice arising from Devon's answer was curable by admonition, we are not convinced appellant's trial was rendered fundamentally unfair so as to violate due process. In order to be convinced otherwise, appellant would have to persuade us that there was some other misuse of the testimony that went beyond the jury hearing it just the one time, but the record simply does not support this.

*People v. Garcia* (2014) 229 Cal.App.4th 302 is instructive on this point. In *Garcia*, the appellate court found the trial court acted within its discretion by denying a motion for mistrial due to the jury hearing testimony regarding the defendant's sexual orientation. The appellate court noted that had the issue of the defendant's sexual orientation been "left alone" after the initial reference, the appellate court likely would have found no error. (*Id*. at p. 312.) However, the appellate court ultimately found appellant's due process rights were violated because the issue was not "left alone" by the prosecutor when the prosecutor improperly repeatedly attempted to make an issue out of the defendant's sexual orientation in closing argument. (*Ibid*.) Here, unlike in *Garcia*,

---

**6** Indeed, the Supreme Court has repeatedly found any prejudice arising from brief and ambiguous references to a defendant's past criminality can be cured by appropriate admonition to the jury and thus does not result in error of constitutional magnitude. (See e.g., *People v. Avila* (2006) 38 Cal.4th 491, 572–574 [any prejudice arising from witness's statement defendant had "barely got[ten] out of prison" at the time of the offense was cured by admonition to " 'disregard that testimony and treat it as though you had never heard it. You shall not consider it for any purpose. In your deliberations you may not discuss or consider it' "]; *People v. Valdez* (2004) 32 Cal.4th 73, 128 ["brief and isolated" statement by witness that he had interviewed defendant in jail did not warrant mistrial].)

the issue was "left alone"; there was no other reference to, or improper use of, the fact of appellant's incarceration. Because any prejudice was curable by admonition and the jury never heard of appellant's incarceration again, appellant's trial was not rendered fundamentally unfair.[7]

We further note there is no evidence on the record the jury was unduly biased against appellant; rather, the questions the jury asked during deliberations reveal they carefully considered his credibility, as well as Doe's. The jury asked if Mariah testified whether she " 'did' or 'did not' trust" appellant. They also asked to review the video of Doe's forensic interview where she was explaining what had happened before the forensic interviewer attempted to establish a timeline. The jury did not request to review Devon's testimony in whole (if they had, the reference to appellant's incarceration would have been stricken), but they did ask to review the part of her testimony relating to appellant's sexual activity (which had been stricken and was not provided). These requests appear to demonstrate the jury's thoughtful attempt to determine whether Doe or appellant was more credible. Finally, the jury asked for guidance regarding what acts pertained to which counts, an indication they were conscientiously performing their duty by considering each allegation and separate crime, and were not biased against appellant, and not convicting him simply because they thought he was a "bad person" as he alleges.

We note that in his reply brief, appellant cites several cases where evidence the defendant had been charged with or convicted of a prior crime was deemed incurable by

---

[7] That the trial court did not in fact admonish the jury presents a separate issue, as the trial court only did not do so at defense counsel's request. Like in *Collins*, *supra*, 49 Cal.4th 175, defense counsel made the tactical (and not unreasonable) decision not to have the jury admonished. Like in *Collins*, this tactical decision did not affect the court's decision that the testimony did not render the defendant's trial unfair. To the extent appellant contends that he suffered an unfair trial because the trial court did not admonish the jury, this issue was forfeited by defense counsel's request. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1265 [a tactical request a trial court not give a particular jury instruction "presents a bar to consideration of the issue on appeal"].)

admonition to the jury to disregard the evidence:  *People v. Figuieredo* (1955) 130 Cal.App.2d 498, 505–506 [where a trial court denied defense counsel's motion to strike a police officer's references to the defendant having been in San Quentin, the defendant was deprived of a fair trial]; *People v. Ozuna* (1963) 213 Cal.App.2d 338, 341–342 [a witness's reference to the defendant as an "ex-convict" was not curable by admonition]; *People v. Roof* (1963) 216 Cal.App.2d 222, 225–226 [the appellate court ordered reversal where a police officer testified appellant told him he had been charged with contributing to delinquency of a minor despite trial court's admonishment to the jury to disregard the testimony]; and *People v. Allen* (1978) 77 Cal.App.3d 924, 934–935 [the trial court erred in failing to grant the defendant's motion for mistrial after a witness testified appellant was "on parole" despite having stricken the testimony and admonished the jury].  These cases do not assist appellant.  These cases all predate *Collins* and other controlling California Supreme Court precedent[8] that establishes brief and ambiguous references to prior criminality are curable by admonition.  We also find these cases distinguishable because there the witnesses disclosed prior felony charges or convictions. In this case, Devon only mentioned that appellant was incarcerated, not that he was previously charged with any crimes or had suffered any conviction.

Appellant also cites *People v. Taylor* (1982) 31 Cal.3d 488, 494 to support his assertion that "when a defendant's custody status is kept secret from the jury but then revealed accidentally, '[t]he prejudice may only be subtle and jurors may not even be conscious of its deadly impact, but in a system in which every person is presumed innocent until proved guilty beyond a reasonable doubt, the Due Process Clause forbids toleration of the risk.' "  Appellant's reliance on *Taylor* is misplaced.  *Taylor* dealt with a trial court's refusal to allow the defendant to wear civilian clothing.  (*Id.* at p. 493.)  The

---

**8**    See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [decisions of the California Supreme Court are binding upon and must be followed by all state courts of California.]

12.

court pointed out the Supreme Court had "observed that the defendant's jail clothing is *a constant reminder* to the jury that the defendant is in custody, and tends to undercut the presumption of innocence by creating an unacceptable risk that the jury will impermissibly consider this factor." (*Id*. at p. 494.) We find the single mention of appellant's incarceration is distinguishable from a defendant spending an entire trial in jail attire.

For the above reasons, we find Devon's mention of appellant being incarcerated did not violate his constitutional rights to due process or a fair trial.

## II. Trial Court's Failure to Instruct on the Lesser Included Offense of Simple Assault

Appellant contends the trial court erred by failing to instruct the jury sua sponte as to count 11 on the lesser included offense of simple assault. We disagree.

The trial court has a sua sponte duty to "instruct fully on all lesser necessarily included offenses supported by the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 148–149.) " 'This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.' [Citation.] '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits." ' " (*People v. Smith* (2013) 57 Cal.4th 232, 239–240.) " ' "The rule's purpose is … to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence." ' " (*People v. Landry* (2016) 2 Cal.5th 52, 96.)

An instruction on a lesser included offense is not warranted unless it is supported by "substantial evidence," meaning "evidence from which a reasonable jury could

conclude that the defendant committed the lesser, but not the greater, offense." (*People v. Shockley* (2013) 58 Cal.4th 400, 403.)

"On appeal, we independently review whether a trial court erroneously failed to instruct on a lesser included offense." (*People v. Trujeque* (2015) 61 Cal.4th 227, 271.)

The parties agree, as do we, that simple assault (§ 240) is a lesser included offense of assault with intent to commit lewd conduct (§ 220, subd. (a)(2)). (See *People v. Elam* (2001) 91 Cal.App.4th 298, 308.) A simple assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) The only difference between simple assault and assault with intent to commit lewd conduct is the latter requires proof that when the defendant acted, he intended to commit a lewd act. An assault with intent to commit lewd conduct cannot be committed without necessarily committing a simple assault.

The question before us is whether substantial evidence supported a reasonable conclusion that the lesser, but not the greater, offense was committed. Given the evidence presented at trial, we conclude it does not. First, the uncontradicted circumstances of the incident—that Doe was naked in the shower when appellant attempted to lift her up against him—supports a reasonable inference the assault was committed with an intent to commit lewd acts. Doe's statements bolster this inference. Doe disclosed during the forensic interview that appellant had squeezed her buttocks while lifting her, and appellant had sexually abused her three times prior. We note appellant does not argue his conviction on count 11 was not supported by substantial evidence. There is not a reasonable explanation for why the act was done, if not with lewd intent. That Mariah testified appellant was clothed when she saw him after the assault, rather than naked, as Doe testified, does support an inference the assault was not coupled with the intent to commit lewd conduct, as appellant argues. Given the evidence that appellant entered the shower where his nine-year-old sister was, who he had previously sexually abused, and picked her up against his chest, no reasonable juror

14.

would view appellant's act as simple assault without the intent to commit lewd conduct, whether appellant was clothed or not.

Appellant's assertion that "[g]iven the state of the evidence, one or more jurors could have rationally concluded that the prosecution had failed to prove that appellant's assault amounted to nothing more than a prank or horseplay that ended with comedic results," is baseless. Despite appellant's suggestion otherwise, the jury only had before it two competing scenarios: one established by Doe's testimony, which strongly suggests sexual intent even if they also believed Mariah's testimony appellant was fully clothed during the incident; and the other, established by appellant's testimony, who denied ever entering the shower or picking up Doe. Thus, there is simply no evidence to support appellant's assertion that appellant picked up Doe as a "prank or horseplay." Rather, at trial, appellant denied the touching occurred at all and that he only opened the curtain to tell her to do her chores. He told Devon a different story; that he was in the bathroom and slipped on the vase when he got up to get toilet paper. He withheld from Devon that Doe was in the bathroom until Devon confronted him about it and then stated the other bathrooms had been full, but Mariah testified the other bathrooms were unoccupied at the time of the incident. Appellant's inconsistent versions of the events and reticence to admit to Devon that Doe was in the bathroom when he slipped on the vase further undermines his argument that the offense constituted simple assault but not assault with lewd intent. Not only is the third scenario appellant proffers on appeal—that appellant was pulling a "prank" on Doe—not supported by substantial evidence, such a conclusion would have resulted from unreasonable speculation not supported by either prosecution or defense evidence.

Appellant contends the alleged error went beyond "merely a violation of state law and infringed on his right to due process within the meaning of the Fourteenth Amendment." For the reasons already stated, we find no error nor that the failure to

instruct the jury on simple assault rendered appellant's trial fundamentally unfair so as to violate his right to due process.

## **DISPOSITION**

The judgment is affirmed.


DE SANTOS, J.

WE CONCUR:


HILL, P.J.


PEÑA, J.

16.